IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:10-CV-02489-BF |
| § | |
| MANDELL FAMILY VENTURES, § | |
| LLC, et al, § | |
| § | |
| Defendants/Third-Party Plaintiffs, § | |
| § | |
| v. § | |
| § | |
| TIME WARNER NY CABLE, LLC § | |
| d/b/a TIME WARNER CABLE, § | |
| § | |
| Third-Party Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court for decision is Plaintiff J&J Sports Productions, Inc.'s ("J&J Sports") Motion for Summary Judgment (doc. 35), filed on June 20, 2012. Defendants Mandell Family Ventures, LLC, Individually and d/b/a Greenville Avenue Pizza Company ("Mandell Family Ventures") and Samuel J. Mandell, III, Individually and d/b/a Greenville Avenue Pizza Company ("Mandell") (collectively referred to as "Defendants") filed their response on July 13, 2012. J&J Sports filed its reply on July 30, 2012. For the following reasons, the Court **GRANTS** the Motion for Summary Judgment as to Defendants Mandell Family Ventures and Mandell, and enters judgment in favor of J&J Sports.

### Standard of Review

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will

preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

Evidence on summary judgment may be considered to the extent that it is not based on hearsay or other information that is not admissible at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *see* Fed.R.Civ.P. 56(e) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence ..."). This Court will consider only competent summary-judgment evidence in considering whether J&J Sports is entitled to summary judgment.

### Undisputed Material Facts[1]

J&J Sports is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. J&J Sports possessed the proprietary rights to exhibit and sublicense the right to

---

[1] These facts were taken collectively from J&J Sports' Motion for Summary Judgment and Brief in Support, designated as (Pl.'s Br.), and Defendants' Response to Plaintiff's Motion for Summary Judgment and Brief, designated as (Defs.' Br.).

3

exhibit the closed-circuit telecast of the December 8, 2007 Undefeated: Floyd Mayweather, Jr. v. Ricky Hatton WBC Welterweight Championship Fight Program, including the undercard or preliminary bouts (the "Event"), to commercial establishments. J&J Sports was granted this exclusive license from Golden Boy Promotions, Inc. ("Promoter") through their Closed-Circuit Television License Agreement. (*See* Appx. to Pl.'s Br. at 13-18.) In Texas, the Event was only legally available to commercial establishments, such as theaters, bars, clubs, lounges, and restaurants, through an agreement with J&J Sports. (*Id.* at 6.) The interstate satellite transmission of the Event was electronically coded or scrambled as a safeguard against the unauthorized interception of receipt of the Event. Commercial establishments that contracted with J&J Sports were required to pay a sublicense fee to receive the Event. The sublicense fee for the Event was based on the capacity of the establishment.

Greenville Avenue Pizza Company ("Greenville Avenue Pizza") is a restaurant in Dallas, Texas that is owned by Mandell Family Ventures. (Appx. to Pl.'s Br. at 52, 54, Depo. Mandell.) Mandell owns all of the shares of Mandell Family Ventures. (Appx. to Defs.' Br. at 3, Aff. Mandell.) Greenville Avenue Pizza was a commercial customer of Time Warner Cable from September 20, 2007 until after December 31, 2007. During those months, Time Warner Cable provided cable television service to Greenville Avenue Pizza through a cable network. On December 8, 2007, Greenville Avenue Pizza purchased the Event from Time Warner Cable for $54.95. Greenville Avenue Pizza broadcast the Event to their patrons on December 8, 2007. Greenville Avenue Pizza did not advertise the Event or charge a cover charge or fee to enter Greenville Avenue Pizza or to view the broadcast of the Event. Greenville Avenue Pizza did not pay a commercial sublicense fee to J&J Sports to broadcast the Event. (Appx. to Pl.'s Br. at 64, Depo. Mandell.)

J&J Sports filed the present lawsuit on December 7, 2010, alleging that Defendants violated 47 U.S.C. §§ 553 and 605, of the Federal Communications Act of 1934, as amended (the "Communications Act"), by broadcasting the Event without first paying a license fee to J&J Sports. (*See* Pl.'s Compl. at ¶¶ 10, 18, 19.)

### Preliminary Matters

On October 3, 2012, Defendants filed a Motion to Extend Time to Respond to Plaintiff's Summary Judgment Motion (doc. 50). The Court finds good cause exists pursuant to Federal Rule of Civil Procedure 6(b), and thus GRANTS the motion. This Court will consider Defendants' response in deciding this Motion for Summary Judgment.

Defendants assert three affirmative defenses in their brief: standing, collateral estoppel, and statute of limitations. (Defs.' Br. at 18-25.) As discussed in greater detail in the Analysis section, the Court finds that J&J Sports is an "aggrieved person" under the Communications Act, and therefore has standing to bring this action. Additionally, Defendants argue that J&J Sports' claims should be barred by collateral estoppel. However, Defendants did not raise the affirmative defense of collateral estoppel in their Answer, and therefore it is considered waived. *See Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985) ("[c]ollateral estoppel, or issue preclusion, is generally considered to be a variant of the doctrine of res judicata. Under F.R.C.P. 8(c), res judicata, and hence collateral estoppel, is an affirmative defense which if not pled is considered waived"). Finally, Defendants argue that the statute of limitations is two years for J&J Sports' claims, and cite to a state court of appeals opinion, *J&J Sports Productions, Inc. v. JWJ Management, Inc.*, 324 S.W.3d 823 (Tex.App. – Fort Worth, no pet.), to support their contention. (Defs.' Br. at 23-25.) However, in the Fifth Circuit, the statute of limitations for claims brought pursuant to the Communications Act is three years. *See Prostar v.*

5

*Massachi,* 239 F.3d 669, 677-78 (5th Cir. 2001). This Court is, of course, bound by Fifth Circuit precedent. Therefore, the Court finds that J&J Sports brought this action within the three-year statutory period, and thus its claims are not barred by the statute of limitations. Defendants' affirmative defenses fail as a matter of law.

Defendants object to certain statements made in the affidavit of Thomas P. Riley. However, the Court need not address the details of these objections, as the material facts to establish liability are undisputed by the parties. The Court finds that the admission of these statements by Thomas P. Riley is irrelevant. Thus, Defendants' objections are OVERRULED.

## Analysis

The Communications Act was enacted to discourage the theft of cable service and protect the revenue of cable television companies. *Entertainment by J&J, Inc. v. Al-Wahah Enterprises, Inc.,* 219 F.Supp.2d 769, 773 (S.D. Tex. 2002) (citations omitted). The Communications Act is a strict liability statute. *See Garden City Boxing Club, Inc. v. Vinson,* No. 3:03-CV-0700-BD(P), 2003 WL 22077958, at *2 (N.D. Tex. Sept. 3, 2008); *J&J Sports Productions, Inc. v. Q Café, Inc.,* No. 3:10-CV-02006-L, 2012 WL 215282, at *3 (N.D. Tex. Jan. 25, 2012); *Joe Hand Promotions, Inc. v. Lee,* No. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012). Section 553 of the Communications Act addresses the illegal receipt of broadcasts through cable services.[2] Section 605 of the Communications Act

---

2 Section 553(a) provides, in relevant part: "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). The Section further provides that "[a]ny person aggrieved by a violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction." *Id.* at § 553(c)(1).

addresses the illegal receipt of broadcasts through satellite signals.³ Since J&J Sports was the exclusive licensee of the distribution rights to the Event, J&J Sports is an "aggrieved person" under the statute and can bring a private right of action for either actual damages or statutory damages for each violation. *See* 47 U.S.C. §§ 553(c)(1) & (3)(A); 605(d)(6) & (e)(3)(C)(I); *see also Garden City Boxing Club,* 2003 WL 22077958, at *2. Thus, Defendants' contention that J&J Sports does not have standing to pursue its claims under the Communications Act fails. (*See* Defs.' Br. at 18-20.)

In order to establish liability under the Communications Act, J&J Sports must prove: (1) that the Event was shown in Greenville Avenue Pizza and (2) that J&J Sports did not authorize such exhibition of the Event. *See Q Café,* 2012 WL 215282, at *3; *Joe Hand Promotions,* 2012 WL 1909348, at *3; *Garden City Boxing Club,* 2003 WL 22077958, at *2. These facts are undisputed. In their brief, Defendants state "[a]nd Greenville Avenue Pizza did purchase the cable broadcast of the Mayweather-Hatton fight and other boxing matches, which were broadcast starting at 7:30 p.m. on December 8, 2007." (Defs.' Br. at 4.) Defendants further state that "Mandell authorized the purchase of

---

3  Section 605(a) states:

> No person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception ... to any person other than the addressee, his agent, or attorney .... No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

the Mayweather-Hatton fight from the cable operator" and "Greenville Avenue Pizza paid Time Warner Cable $54.95 for the cable television broadcast of the Mayweather-Hatton fight." (*Id.* at 4-5.) Furthermore, in his deposition, Mandell admits that the Event was shown in Greenville Avenue Pizza and that a license fee was not paid to J&J Sports. (*See* Appx. to Pl.'s Br. at 61, 64.)

Defendants contend that the interception or receipt of the Event was not unauthorized because they purchased the Event from Time Warner Cable. However, the court in *Garden City Boxing Club* addressed this same issue and explained: "[t]he fact that defendant may have purchased and lawfully received the Lewis-Tyson fight from DirecTV does not immunize her from liability for then broadcasting the event to patrons at her bar without obtaining authorization from plaintiff, the exclusive licensee." 2003 WL 22077958, at *2 (citations omitted). Additionally, to the extent that Defendants may argue that their failure to charge a cover charge or fee to enter Greenville Avenue Pizza or to watch the Event would absolve them from liability also fails. *See id.* (citations omitted.) Plaintiff has proven the two necessary elements under the strict liability statute.

J&J Sports brought this action alleging violations of Sections 553 and 605 of the Communications Act. Defendants argue that Section 605 of the Communications Act only applies to interceptions through radio or satellite, and thus they could not have violated this Section because they received the Event through a cable network. (Defs.' Br. at 16-17.) While the circuits are split as to whether Section 605 can apply to cable transmissions as well as radio and satellite, the Fifth Circuit has discussed this split of authority, yet declined to address the issue. *See Prostar*, 239 F.3d at 673-74. Nevertheless, this Court deems it unnecessary to determine whether both sections apply to the present facts, as the remedies under sections 553 and 605 are not cumulative, and thus J&J Sports cannot recover under both sections. *See Garden City Boxing Club,* 2003 WL 22077958, at *3; *Joe Hand*

*Promotions,* 2012 WL 1909348, at *3.

The Court finds that Defendants have violated the Communications Act, but that their violation was not willful. Greenville Avenue Pizza was set up as a commercial account with Time Warner Cable. (Appx. to Pl.'s Br. at 65, Depo. Mandell.) An employee of Greenville Avenue Pizza contacted Time Warner Cable on December 8, 2007 to inquire about, and possibly purchase, the Event. The employee ordered the Event from Time Warner Cable, and Mandell, acting as corporate representative of Greenville Avenue Pizza, paid Time Warner Cable $54.95 to broadcast the Event. There is no evidence demonstrating that Mandell or Mandell's employee should have known that this fee was incorrect. Instead, the evidence indicates that Time Warner Cable should have known of the commercial purposes of Defendants' account. Since the Court finds the Defendants' violation was not willful, J&J Sports is not entitled to additional damages under the Communications Act. *See* 47 U.S.C. §§ 553(c)(3)(B); 605(e)(3)(c)(ii).

J&J Sports submitted summary-judgment evidence demonstrating its license fee rates for commercial establishments. (Appx. to Pl.'s Br. at 43.) An establishment such as Greenville Avenue Pizza, which has a maximum occupancy of 49 people, would have paid approximately $2,000.00 to J&J Sports to broadcast the Event. (*Id.*)

In Plaintiff's Motion for Summary Judgment, J&J Sports asks the Court to award statutory damages pursuant to 47 U.S.C. §§ 553(c)(3)(A)(ii) and/or 605(e)(3)(C)(i)(II) against Defendants, jointly and severally, in the amount of $10,000. (Pl.'s Br. at 20-21.) Both provisions allow for a maximum award of statutory damages in the amount of $10,000 per violation, and Section 553 provides a minimum award of $250 and Section 605 provides a minimum award of $1,000. *See* 47 U.S.C. §§ 553(c)(3)(A)(ii) and/or 605(e)(3)(C)(i)(II). As stated previously, recovery under both

9

sections is not permissible. *See Garden City Boxing Club,* 2003 WL 22077958, at *3; *Joe Hand Promotions,* 2012 WL 1909348, at *3. Furthermore, the Court finds the amount of $10,000 in statutory damages to be unreasonable. Greenville Avenue Pizza is a small establishment that did not have a liquor license on the date of the Event, did not advertise for the Event, and did not charge an admission fee to watch the Event. Additionally, Mandell has adamantly stated that he believed his purchase of the Event was legally authorized by Time Warner Cable and he was unaware of J&J Sports. The Communications Act vests courts with discretion in assessing statutory damages and allows a reduction to $100 under Section 553(c)(3)(C), and $250 under Section 605(e)(C)(iii), "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section". 47 U.S.C. §§ 553(c)(3)(C); 605(e)(C)(iii). The Court finds that Defendants were not aware and had no reason to believe that their acts constituted a violation under this statute. Therefore, because this is an extraordinary case, the Court exercises its discretion and awards J&J Sports statutory damages in the amount of $350.00.

Pursuant to 47 U.S.C. §§ 553(c)(2)(C) and 605(e)(3)(B)(iii), the Court also awards the recovery of full costs, including attorney's fees to J&J Sports. J&J Sports is instructed to submit an affidavit of costs, including attorney's fees to the Court within twenty days of the date of this decision. The Court also awards injunctive relief from future violations of the Communications Act.

In his deposition, Mandell indicated that he was the sole owner of all of the shares of Mandell Family Ventures, which owns Greenville Avenue Pizza. He stated that he was responsible for all of its activities, including managing the restaurant, cooking the food, paying the bills, payroll, inventory, accounting, and scheduling employees. (*See* Appx. to Pl.'s Br. at 53, Depo. Mandell.) Mandell also testified that he has the authorization to order pay-per-view programming because he pays all of

Greenville Avenue Pizza's bills. (*Id.* at 57-58.) Under the Communications Act, an individual can be held vicariously liable if (1) he had the right and ability to supervise the activities of the establishment and (2) a financial interest in those activities. *See Q Café*, 2012 WL 215282, at *4 (citations omitted). Mandell has admitted to both of these elements, and thus he is vicariously liable under the Communications Act. Accordingly, the Court finds that Defendants shall be jointly and severally liable for damages to J&J Sports.

## Conclusion

For the foregoing reasons, the Court GRANTS J&J Sports' Motion for Summary Judgment. It is, hereby, ORDERED that judgment shall be entered in favor of J&J Sports and against Defendants Mandell Family Ventures and Mandell.

SO ORDERED, October 5, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE